STATE OF NEBRASKA, APPELLEE, V.
HERMAN BUCKMAN, APPELLANT.
613 N.W. 2d 463

Filed July 7, 2000.   Nos. S-99-948, S-99-1009.

James R. Mowbray and Robert W. Kortus, of the Nebraska Commission on Public Advocacy, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Herman Buckman appeals from an order of the Lancaster County District Court which dismissed his motions for postconviction relief pursuant to Neb. Rev. Stat. § 29-3001 et seq. (Reissue 1995). We have consolidated cases Nos. S-99-948 and S-99-1009 for purposes of briefing and oral argument.

## SCOPE OF REVIEW

■ A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Reeves*, 258 Neb. 511, 604 N.W.2d 151 (2000).

## FACTS

### CASE NO. S-99-1009

Buckman was charged with burglary (count I) and with conspiracy to possess a controlled substance (count II). Buckman was also alleged to be a habitual criminal in both counts. On February 27, 1989, the trial court accepted Buckman's plea of

no contest on count II. As part of a plea bargain, count I and a separate charge of possession of a firearm by a felon were dismissed. On March 2, Buckman was sentenced on count II, as enhanced by the habitual criminal statute, to 20 to 60 years' imprisonment to be served concurrently with the sentence imposed on count II in case No. S-99-948. No direct appeal was filed with respect to Buckman's conviction for conspiracy to possess a controlled substance.

## CASE NO. S-99-948

With respect to case No. S-99-948, Buckman was charged with and subsequently found guilty by a jury of the first degree murder of Denise Stawkowski (count I) and use of a weapon to commit a felony (count II). He was later determined to be a habitual criminal. On March 2, 1989, he was sentenced on count I to life imprisonment, with credit for 377 days served plus any and all good time earned during that period, and on count II, as enhanced by the habitual criminal statute, to 20 to 60 years' imprisonment to be served consecutively to the sentence imposed on count I.

A detailed description of the facts regarding case No. S-99-948 is set forth in our opinion concerning Buckman's direct appeal. See *State v. Buckman*, 237 Neb. 936, 468 N.W.2d 589 (1991). We reiterate only those facts necessary for resolution of this postconviction action. The record shows that at the time of her death on February 19, 1988, the victim was a 25-year-old wife and mother of four children. She was a drug dealer and a drug user who sold drugs to several people.

The victim's husband testified that the victim began selling small quantities of methamphetamine to Buckman and Goldie Fisher in December 1987. The victim kept a record of her drug transactions in a blue trifold ledger, along with the drugs, money, and razor blades for dividing the drugs. In January 1988, Buckman and Fisher began to purchase cocaine from the victim. Buckman and Fisher paid for the drugs with cash or offered merchandise in exchange for the drugs.

Shortly before the murder, Buckman became dissatisfied with either the quantity or quality of the drugs he was buying from the victim. On at least one occasion, Buckman threatened to

steal any drugs the victim might have had. The morning before the day of the murder, Buckman and Fisher traded a VCR for the balance due on an "eight-ball" of drugs received earlier in the week from the victim. Later that day, they were trying to sell leather jackets and baby clothes to get money to pay Fisher's babysitter. A few hours before the murder, they tried to sell or trade a ".38 Special" gun to the victim's husband for drugs. The same caliber gun was used to kill the victim.

It was established that when the victim was with Fisher at approximately 1 a.m. on February 19, 1988, the victim's purse contained roughly $2,000 and three eight-balls of cocaine. None of these items were found with the victim's body when it was discovered at approximately 3:20 the same morning. On February 19, after the murder, Buckman and Fisher spent large amounts of cash in Lincoln, but when they were arrested, the baby clothes and leather coats were still in Buckman's car. At that time, Buckman had $656 in cash in his possession.

Karen Niemann testified that she picked up Fisher, who was alone on a road near the location of the murder, at approximately 1:30 a.m. This was within the timeframe for the victim's death as set by the pathologist. Other evidence placed Fisher with Buckman immediately before and after the murder.

Certain evidence placed Buckman at the scene of the murder. There were bloodstains on his clothing and on the steering wheel cover and floormats in his car. A Kool cigarette butt was found in the victim's car, and a package of Kool cigarettes and brown slippers were found near the murder scene. A cellmate of Buckman's testified that Buckman bragged that he had killed the victim in the presence of Fisher and that he had used the money he stole from the victim to pay debts.

Buckman was represented on direct appeal by the same attorneys he had at trial. On appeal, we held that (1) the evidence supported the convictions, (2) the jury was not required to be unanimous as to the theory which brought it to its guilty verdict on the first degree murder charge, and (3) the admission of evidence regarding Buckman's use of illegal controlled substances and the receipt of stolen property was not an abuse of discretion. See *State v. Buckman*, 237 Neb. 936, 468 N.W.2d 589 (1991). We also concluded that Buckman's appeal did not preserve the

issue of whether the trial court erred in overruling his motion in limine and his objection at trial to Niemann's testimony, and we refused to consider his claim that the trial court erred in not requiring the State to elect between premeditated murder and felony murder. *Id.*

## MOTIONS FOR POSTCONVICTION RELIEF

On April 1, 1998, Buckman filed a motion for postconviction relief with respect to his convictions for first degree murder and use of a weapon, which he subsequently amended. On July 28, Buckman filed a motion for postconviction relief with respect to his conviction for conspiracy to possess a controlled substance, which was also subsequently amended.

On January 27, 1999, the State requested that the district court deny an evidentiary hearing and overrule Buckman's motions to vacate and/or set aside the judgments and/or convictions. On May 28, the district court denied an evidentiary hearing in both cases and dismissed the motions for postconviction relief. Buckman appeals from this order.

## ASSIGNMENTS OF ERROR

Buckman asserts that (1) the district court erred in failing to grant an evidentiary hearing; (2) the district court erred in dismissing the amended motions for postconviction relief; and (3) he was denied the right to a fair trial and the conflict-free assistance of counsel at trial and on direct appeal, in violation of the 5th, 6th, and 14th Amendments to the U.S. Constitution.

## ANALYSIS

### CASE NO. S-99-1009

Buckman argues his counsel was ineffective because counsel told him that a plea of no contest to the charge of conspiracy to possess a controlled substance would result in no additional prison time, since his sentence would run concurrently with the sentences imposed for first degree murder and use of a weapon to commit a felony. He also claims he was told that because he would win on appeal, the plea would not matter. Buckman further alleges that counsel told him that he did not need a trial on the conspiracy charge because his appeal regarding the murder and use of a weapon to commit a felony would inevitably be

successful and would vindicate him on all charges, including the conspiracy charge. He further asserts that counsel was ineffective in not challenging the admissibility of the evidence against him and in not informing him regarding the evidentiary challenges that could have been made and those that would be forfeited in the event of a plea of no contest.

An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the state or federal Constitution. *State v. Lyle*, 258 Neb. 263, 603 N.W.2d 24 (1999). An evidentiary hearing is not required when the motion alleges only conclusions of fact or law. *Id.* Further, when the motion properly alleges an infringement of a defendant's constitutional rights, an evidentiary hearing should still be denied when the records and files affirmatively show that the defendant is entitled to no relief. *Id.*

A plea of no contest is equivalent to a plea of guilty. *State v. Spiegel*, 239 Neb. 233, 474 N.W.2d 873 (1991). Normally, a voluntary guilty plea waives all defenses to a criminal charge. *State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998). However, in a postconviction action brought by a defendant convicted on the basis of a guilty plea, a court will consider an allegation that the plea was the result of ineffective assistance of counsel. *Id.*

Under the test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), in order to sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and Neb. Const. art. I, § 11, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defendant, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Lyle, supra.* When a conviction is based upon a guilty plea, the prejudice requirement is satisfied if a defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Silvers, supra.* The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reason-

able and that even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice. *Id.*

Buckman's first two claims of ineffective assistance of counsel allege that his plea was not made voluntarily and intelligently. We have previously set forth the standard by which to determine if a plea was freely, intelligently, voluntarily, and understandingly made. See *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986). In *Irish*, we stated that in order to support a finding that a plea of guilty or no contest has been entered into freely, intelligently, voluntarily, and understandingly,

> 1. The court must
>
> a. inform the defendant concerning (1) the nature of the charge; (2) the right to assistance of counsel; (3) the right to confront witnesses against the defendant; (4) the right to a jury trial; and (5) the privilege against self-incrimination; and
>
> b. examine the defendant to determine that he or she understands the foregoing.
>
> 2. Additionally, the record must establish that
>
> a. there is a factual basis for the plea; and
>
> b. the defendant knew the range of penalties for the crime with which he or she is charged.
>
> We conclude that the taking of the foregoing steps is sufficient to assure that a plea represents a voluntary and intelligent choice among the alternative courses of action open to a criminal defendant, the ultimate standard by which pleas of guilty or nolo contendere are to be tested.

223 Neb. at 820, 394 N.W.2d at 883.

Buckman relies upon *State v. Jefferson*, 5 Neb. App. 646, 562 N.W.2d 77 (1997). In *Jefferson*, the defendant alleged he was promised that the county attorney would ask the court to drop another charge and give Jefferson 45 days' jail time. Instead, the judge sentenced the defendant to a term of 4 to 5 years' imprisonment. In concluding that the files and records did not conclusively establish that the defendant's plea was knowingly and voluntarily made, the Court of Appeals stated:

> [I]n postconviction proceedings where the defendant alleges that his or her plea was induced by some promise, the court must hold an evidentiary hearing on the issue

unless the record conclusively shows that the plea was not induced by any promises, except those included in the plea bargain. Usually the record will not conclusively show that no such promise was made unless the judge addresses the defendant personally on the subject—a good reason for the trial court to specifically discuss the matter with the defendant.

*Id.* at 652, 562 N.W.2d at 81.

In *Jefferson*, the judge did not ask the defendant if any promises had been made to him, and there was no other evidence in the record to establish that no such promises had been made. *Jefferson* is distinguished from the case at bar because Buckman was specifically asked whether anyone had made him any promises other than those contained in his plea bargain, and he said no. From our review of the record, we conclude that Buckman was informed of his rights as required by *Irish* and that he freely, intelligently, voluntarily, and understandingly entered his plea of no contest. Thus, the record affirmatively shows that Buckman is entitled to no relief, and the district court did not err by not granting an evidentiary hearing with respect to these first two claims of ineffective assistance of counsel.

Buckman's third claim of ineffective assistance of counsel relates to an assertion that counsel failed to inform him of evidentiary challenges that would be forfeited by pleading no contest. The record shows that Buckman was specifically asked by the trial court whether he understood that by pleading no contest he would be waiving and giving up his right to raise any defenses to the charge, whether those defenses be procedural, constitutional, or statutory. Buckman replied that he understood. Accordingly, we find no error in the district court's refusal to grant an evidentiary hearing on the issue of ineffective assistance of counsel and that the record affirmatively shows Buckman is entitled to no relief.

## CASE NO. S-99-948

Buckman asserts numerous challenges to his convictions for first degree murder and use of a weapon to commit a felony. These challenges include the use of a statement made to law enforcement about the brand of cigarettes Buckman smoked,

physical evidence seized by the police, evidence seized from Buckman's car, a cigarette package seized from his bedroom, testimony regarding serological testing, and challenges to jury instructions.

Buckman failed to raise these issues on direct appeal even though they were known to him and could have been addressed using the record available on direct appeal. A motion for postconviction relief cannot be used to secure review of issues which were known to a defendant and which were or could have been litigated on direct appeal. *State v. Reeves*, 258 Neb. 511, 604 N.W.2d 151 (2000).

However, Buckman raises the same issues in the context of ineffective assistance of counsel at trial. Since Buckman was represented by the same attorneys on direct appeal as he was at trial, this is his first opportunity to allege ineffectiveness of trial counsel. Therefore, Buckman's claims regarding ineffective assistance of trial counsel are not procedurally barred. See *State v. Lyle*, 258 Neb. 263, 603 N.W.2d 24 (1999).

Buckman first alleges that he was offered two separate and distinct plea bargains: (1) plead to one count of being an accessory to murder and testify against his girl friend, Fisher, or (2) plead to one count of second degree murder and be sentenced to an indeterminate term of 10 years' to life imprisonment without testifying against Fisher. Buckman claims that his counsel advised him that the prosecution's case was so weak that he would be found not guilty at trial and that, therefore, he rejected both of the alleged plea bargains. Buckman asserts that counsel was ineffective in that had he been properly advised as to the strength of the prosecution's case, he would have accepted one of the plea bargains. The district court determined that Buckman did not allege sufficient facts which, if proved, would constitute an infringement of his constitutional rights.

Buckman complains that counsel was ineffective because counsel did not correctly predict the outcome of the trial. We conclude that Buckman cannot raise this issue under the guise of ineffective assistance of counsel. When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel. *State v. Williams, ante* p. 234, 609 N.W.2d 313 (2000). The fact

that Buckman's counsel did not successfully predict the outcome of the trial does not permit Buckman, after conviction, to argue that he would have accepted a plea to a lesser offense. A defendant convicted of a crime cannot assert a claim of ineffective assistance of counsel based upon the fact that the defendant did not accept a plea bargain to a lesser charge and was ultimately convicted of a greater charge. Accordingly, Buckman is precluded from raising this issue.

Buckman's second challenge arises from a statement made after he was arrested and taken to the Lancaster County sheriff's office. There, Buckman asked police officers for a cigarette. When he was offered a Camel Light cigarette, Buckman declined, stating that he smoked Kool King cigarettes. Kool King cigarette butts were found in the victim's car, where her body was found, and a package of Kool King cigarettes was found near the crime scene. Buckman's statement to law enforcement that he smoked Kool King cigarettes was received at trial to prove that Buckman was the source of the cigarette butts and the cigarette package found at the crime scene. Buckman argues that his counsel was ineffective for failing to object to this statement because the statement was the product of an illegal arrest and was taken in violation of his *Miranda* rights.

Buckman claims that his arrest was illegal because the police did not have a warrant for his arrest, nor did they have probable cause to arrest him without a warrant. When a law enforcement officer has knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect is committing or has committed a crime, the officer has probable cause to arrest without a warrant. *State v. Baue,* 258 Neb. 968, 607 N.W.2d 191 (2000). Probable cause for a warrantless arrest is to be evaluated by the collective information of the police engaged in a common investigation. *State v. Nissen,* 252 Neb. 51, 560 N.W.2d 157 (1997).

We conclude that the trial court correctly determined that the police had probable cause to arrest Buckman. Prior to Buckman's arrest, the police had found the victim's body in her car with gunshot wounds to her head. At that time, the police were aware that Buckman and Fisher wanted to buy drugs from the victim and were looking for her a few hours before she was

killed. Buckman and Fisher were seen in the parking lot of a liquor store where the victim had been on the night of the murder. Buckman was seen talking to the victim several hours before the murder, and she had left to meet Buckman a few hours before her body was found. In addition, Fisher was picked up near the crime scene a few hours before the victim's body was found.

Buckman's counsel was not ineffective by not objecting at trial to Buckman's statement that he smoked Kool King cigarettes. The record affirmatively shows that Buckman is entitled to no relief on this issue.

█ Buckman next argues that the statement was taken in violation of his *Miranda* rights. The U.S. Supreme Court has stated:

> *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

*Rhode Island v. Innis*, 446 U.S. 291, 300-01, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). We have excluded from the definition of interrogation a course of inquiry related and responsive to a volunteered remark. See *State v. Lamb*, 213 Neb. 498, 330 N.W.2d 462 (1983).

We conclude that the statement was normally attendant to Buckman's arrest and custody. When Buckman asked for a cigarette, he was offered a Camel Light. His response that he smoked Kool King cigarettes was a volunteered statement. Accordingly, the record affirmatively shows that Buckman is entitled to no relief on this issue.

Buckman's next claim is that his trial counsel was ineffective for not suppressing various items of physical evidence. At the police station, Buckman smoked two Kool King cigarettes which were saved by police. Serological testing was later performed on them, and at trial, the cigarette butts were offered as

evidence that Buckman was responsible for the cigarette butts found at the murder scene.

Buckman claims that his counsel was ineffective for failing to object to this evidence because the cigarette butts were the product of an illegal arrest and because law enforcement did not have a warrant or his consent to seize these items. We have already concluded that Buckman was not illegally arrested, since police had probable cause to arrest him without a warrant, and a warrant was not required to "seize" the cigarette butts which Buckman discarded.

In *State v. Wickline*, 232 Neb. 329, 440 N.W.2d 249 (1989), police seized a cigarette butt that the defendant had smoked at the police station. We stated: "Defendant's argument concerning the seizure of items he discarded as trash at the Ewing police department is without merit. The defendant abandoned these items and sufficiently exposed them to the officer and the public to defeat his claim to fourth amendment protection." *Id.* at 334, 440 N.W.2d at 253.

Accordingly, Buckman's counsel was not deficient for failing to object to the receipt of this evidence. The record affirmatively shows that Buckman is entitled to no relief on this issue.

Buckman next asserts that his counsel was ineffective for failing to suppress the following evidence: cash, a jacket, a sweater, a cap, a saliva sample, and subsequent testing of these items. After Buckman was arrested, police seized $656 in cash and the jacket, sweater, jeans, and cap Buckman had been wearing. Police took a saliva sample from Buckman, which was forensically tested, and his clothing was also tested. All of these items and the results of the forensic testing were received at trial to prove that Buckman was at the scene of the crime and that blood found on his clothing could not be excluded as being that of the victim's. Buckman claims that his trial counsel was ineffective for not suppressing this evidence because it was the product of an illegal arrest and was seized without a warrant and without his consent.

A search made without a warrant is valid if made incidental to a lawful arrest. *Id.* In *Wickline*, after the defendant was lawfully arrested, the arresting officer searched the defendant's belongings. During this search, the officer recovered a screw-

driver, which was later admitted at trial as evidence that it was the type of instrument used to commit the crime. We concluded that this type of seizure was legal. Similarly, in the case at bar, all of the items at issue were seized incidental to a lawful arrest.

A warrant or order was not required in order to take the saliva sample because Buckman was in lawful custody at the time it was taken. Neb. Rev. Stat. § 29-3304 (Reissue 1995) provides as follows:

> No order shall be required or necessary where the individual has been lawfully arrested, nor under any circumstances where peace officers may otherwise lawfully require or request the individual to provide evidence of identifying physical characteristics, and no order shall be required in the course of trials or other judicial proceedings.

Pursuant to Neb. Rev. Stat. § 29-3301 (Reissue 1995), the term "identifying physical characteristics" includes saliva samples. Thus, Buckman is entitled to no relief on this issue.

Buckman next asserts that his counsel should have moved to suppress certain evidence seized from his car. Police officers seized Buckman's car on February 19, 1988, without a warrant. On the morning of February 20, police searched the car pursuant to a search warrant. Another search of the car was conducted on February 24 pursuant to a search warrant issued the day before. During this second search, police officers seized, among other things, a black leather jacket, two floormats, and the steering wheel cover.

These items were tested by a forensic serologist. They were received at trial along with testimony from the serologist that small bloodstains were found on each item. Buckman claims that his trial counsel was ineffective for failing to suppress this evidence, since police illegally seized his car on February 19, 1988, and since his car was illegally searched on February 24 because the search warrant allegedly lacked probable cause.

The trial court concluded that officers had probable cause to believe that a crime had been committed and that Buckman was involved. Buckman and Fisher were seen in Buckman's car talking to the victim prior to the murder. Police officers were aware that Buckman often kept a gun in his car. Police saw Buckman

in his car shortly after the victim's body was found and shortly before he was arrested. We conclude that there was probable cause to believe that Buckman's car contained evidence relevant to the crime. The warrant for the first search of the car was properly issued.

As to the search warrant for the second search of the car on February 24, 1988, this search warrant must be supported by an affidavit establishing probable cause. See *State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999). The affidavit for the second search warrant incorporated the February 19 affidavit, which stated that Buckman and Fisher were seen in Buckman's car talking to the victim prior to the murder, that police officers were aware Buckman often kept a gun in his car, and that the victim died of gunshot wounds to the head. The February 23 affidavit contained additional information regarding stolen items in the car, some of which were linked to the victim's murder, including a VCR, leather coats, children's clothing, and tools. From this affidavit, the trial court correctly concluded that probable cause existed for issuance of the search warrant. Therefore, Buckman's counsel was not deficient for failing to object to the introduction of this evidence. Buckman is entitled to no relief on this issue.

Buckman claims his counsel failed to suppress admission of a cigarette package seized from his residence on February 21, 1988. Police had searched Buckman's residence pursuant to a search warrant which authorized the seizure of a coat; a purse; a folder, including records of drug transactions; a gun; clothing worn by Buckman and Fisher; and car keys. During the search, police found a Kool cigarette package in a trash container in the basement of the residence. The package had been opened from the bottom, rather than the top, as was the Kool King cigarette package found at the crime scene. Buckman claims this cigarette package was illegally seized and that his counsel was ineffective for not moving to suppress it.

A warrantless seizure is justified under the plain view doctrine if (1) a law enforcement officer has a legal right to be in the place from which the object subject to the seizure could be plainly viewed, (2) the seized object's incriminating nature is immediately apparent, and (3) the officer has a lawful right of

access to the seized object itself. *U.S. v. Hatten*, 68 F.3d 257 (8th Cir. 1995).

All three of these elements are met under the circumstances described above. The police had a legal right to be in the place where the object was seized pursuant to the search warrant they had. The object's incriminating nature would have been immediately apparent to the officers due to the fact that this specific type of cigarette package had been found at the crime scene and had been opened in the same unusual manner. Finally, the police had a lawful right of access to the cigarette package because all the items for which they were searching pursuant to the warrant could have been found in the trash can where they found the cigarette package.

Accordingly, Buckman's counsel was not ineffective for failing to move to suppress this evidence. The record affirmatively establishes that Buckman is entitled to no relief on this issue.

Buckman's next claim of ineffective assistance of counsel relates to the testimony of two expert witnesses. Moses Schanfield, Ph.D., testified regarding the results of forensic serological tests he conducted on a Kool King cigarette butt found in the victim's car and known samples of Buckman's blood and saliva. Schanfield stated that only 0.7 percent of the white population and only 4.8 percent of the black population could have been the donor of the saliva found on the cigarette butt. He then concluded that Buckman fell within the 4.8 percent of the black population that could have smoked the cigarette. Reena Roy, Ph.D., testified about the results of forensic testing she conducted on, among other things, the jacket, sweater, and jeans Buckman was wearing at the time of his arrest and the steering wheel cover and floormats from Buckman's car.

Buckman claims that his counsel was ineffective for failing to move for a hearing in accordance with *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), concerning this testimony and for failing to object to the evidence as being inadmissible under Neb. Rev. Stat. §§ 27-403 and 27-702 (Reissue 1995). Essentially, he claims that the evidence was more prejudicial than probative because the database was limited to only two racial classifications.

> In this state, where the rules of evidence apply, the admissibility of an expert's testimony, including an opinion, which is based on a scientific principle or on a technique or process which utilizes or applies a scientific principle, depends on general acceptance of the principle, technique, or process in the relevant scientific community. Stated otherwise, this state adheres "to the *Frye* standard, under which the proponent of the evidence must prove general acceptance by surveying scientific publications, judicial decisions, or practical applications, or by presenting testimony from scientists as to the attitudes of their fellow scientists."

*Sheridan v. Catering Mgmt., Inc.*, 252 Neb. 825, 829, 566 N.W.2d 110, 113 (1997).

Both of these expert witnesses testified that the testing methods they used were of the kind that were generally accepted in the scientific community. Buckman's counsel did challenge the fact that only two racial classifications were used by the experts. Counsel explored the limiting effect of using only two classifications. However, the testimony was admitted despite counsel's attempts to challenge it. The record shows that the statistical frequency tables relied on by both experts were generally accepted and relied upon by experts in the scientific community. The fact that the challenge was not successful does not render counsel's performance deficient. Accordingly, we cannot say that counsel's performance as to this issue was deficient.

Buckman next alleges that his counsel was ineffective for advising him not to testify at trial. He claims that his counsel told him that the prosecution's case was "so weak" that he did not need to testify in order to be found not guilty. He asserts that had he testified, he would have been found not guilty.

When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel. *State v. Williams, ante* p. 234, 609 N.W.2d 313 (2000). The district court concluded that Buckman failed to show that his counsel was deficient or that he was prejudiced with regard to not testifying at trial. The district court found that Buckman's allegation was a legal conclusion—that had he testified, he would not have been convicted. At Buckman's trial,

when the State rested, a dialog was had among the trial court, Buckman, and counsel. Buckman was advised of the benefits and detriments of testifying and not testifying. The record shows that he made the choice not to testify after having discussed the matter with his counsel. Buckman's claim has no merit.

Buckman's final challenge under his ineffective assistance of counsel argument relates to the jury instructions. Buckman first asserts that the jury instructions required the jury to find him not guilty of first degree murder before they could consider the lesser-included offenses of second degree murder and manslaughter. We addressed the "acquittal first" instruction in *State v. Jones*, 245 Neb. 821, 828-29, 515 N.W.2d 654, 658 (1994), where we stated:

> The problem with [the acquittal first] instruction . . . is not that it requires the jury to acquit the defendant on the greater charge before considering the lesser charge. An acquittal first instruction provides "for a more logical and orderly process for the guidance of the jury in its deliberations." *State v. Wussler*, 139 Ariz. 428, 430, 679 P.2d 74, 76 (1984). There are many jurisdictions that approve the propriety of instructions requiring acquittal of the most serious offense charged before consideration of lesser offenses.

Accordingly, the instruction was proper. Therefore, the district court did not err in denying Buckman postconviction relief on this issue.

Buckman next asserts that he received ineffective assistance of counsel because the jury instruction on the lesser-included offense of second degree murder failed to include the necessary element of malice, thereby reducing the prosecution's burden of proof. Our decision in *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994), that malice was an element of second degree murder was overruled in *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). At the time of Buckman's trial, malice was not included as an element of second degree murder. Accordingly, failure to instruct on it was not error. Buckman's motion for postconviction relief assigned other errors with regard to the instructions, but such errors were not assigned and argued on appeal. Therefore, we will not consider such errors on appeal as they relate to his argument that counsel was ineffective.

Finally, Buckman alleges that one of his attorneys had represented both him and an individual who was an endorsed witness listed on the informations for both cases now here on appeal. He claims that the motion for postconviction relief in that individual's case raises significant questions about whether the dual loyalties of counsel were detrimental to his cases.

It appears that this is the first time Buckman has made any mention of this claim. It does not appear anywhere in the record, in his amended motion for postconviction relief, or in the district court's order. An issue not presented to or passed on by the trial court is not appropriate for consideration on appeal. *Nebraska Pub. Emp. v. Otoe Cty.*, 257 Neb. 50, 595 N.W.2d 237 (1999). Accordingly, we need not consider this issue.

### CONCLUSION

For all of the foregoing reasons, we affirm the denial of postconviction relief in cases Nos. S-99-948 and S-99-1009.

AFFIRMED.