No. 2--02--0855    

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Stephenson County.

)

Plaintiff-Appellee, ) 

)

v. ) Nos. 96--CF--437

     ) 96--CF--446

)

BARRY W. MILLER, ) Honorable

) Charles R. Hartman,

Defendant-Appellant. ) Judge, Presiding.

______________________________________________________________________________

JUSTICE GROMETER delivered the opinion of the court:

Following the denial of his motions to suppress evidence, defendant, Barry W. Miller, pleaded guilty in the circuit court of Stephenson County to one count of possession with intent to deliver 900 grams or more of a substance containing cocaine (720 ILCS 570/401(a)(2)(D) (West 1996)) (case No. 96--CF--437) and one count of possession with intent to deliver more than 500 grams of a substance containing cannabis (720 ILCS 550/5(e) (West 1996)) (case No. 96--CF--446).  The trial court sentenced defendant to concurrent sentences of 25 years' imprisonment on the former conviction and seven years' imprisonment on the latter conviction.  Subsequently, defendant filed a 
pro se
 petition for relief pursuant to the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122--1 
et seq.
 (West 1998)), alleging various violations of his constitutional rights.  Defendant's petition was later amended by appointed counsel.  After an evidentiary hearing, the trial court modified defendant's sentence but otherwise denied defendant's petition.

On appeal, defendant reasserts a claim that he raised in his petition for postconviction relief.  Namely, defendant argues that trial counsel was ineffective at the hearing on the motion to suppress evidence relating to his conviction in case No. 96--CF--437, because trial counsel failed to introduce evidence that the cocaine seized was discovered in a duffel bag that was zipped closed.  
According to defendant, had trial counsel presented this evidence, the result of the suppression hearing would have been different and he would not have pleaded guilty.  We agree with defendant.  Accordingly, we reverse the decision of the trial court denying defendant's petition for postconviction relief, vacate defendant's guilty plea in case No. 96--CF--437, and remand the cause for further proceedings.

I.  BACKGROUND

The facts underlying this appeal reveal that in separate indictments filed on December 19, 1996, defendant was charged with unlawful possession with intent to deliver more than 900 grams of a substance containing cocaine (720 ILCS 570/401(a)(2)(D) (West 1996)) and unlawful possession with intent to deliver 500 grams or more of a substance containing cannabis (720 ILCS 550/5(e) (West 1996)).  On June 20, 1997, defendant
 filed separate motions to suppress evidence relating to both charges.  Relevant here, the motion relating to the former charge alleged that on December 14, 1996, law enforcement officials illegally seized cocaine from a locked storage cabinet located at 1225 W. Harrison Street, Freeport, Illinois.  A hearing on defendant's motion was held on July 7, 1997.

The only witness at the suppression hearing was Michael DeMong.  DeMong testified that he had rented the single-family home located at 1225 W. Harrison Street for seven years.  In late 1995, DeMong permitted defendant to use the house.  Although DeMong gave defendant a key to the premises, he also retained a key for himself.  In August 1996, DeMong moved to his girlfriend's house.  However, DeMong continued to rent the home on Harrison Street and receive mail there.  In addition, DeMong's cat resided at the house, and DeMong left some of his clothing and furniture there.  According to DeMong, he visited the house every other day to feed and check on his cat.  DeMong stated that defendant would also feed the cat and that defendant kept a sofa at the home.  Defendant did not contribute to the rent, however, and DeMong was unsure if defendant stayed overnight.

The Harrison Street residence had two built-in storage cabinets, one of which was locked with a padlock belonging to DeMong.  DeMong allowed defendant to use the locked cabinet free of charge, and he gave defendant the only two padlock keys that he possessed.  DeMong stored a currency collection and some baseball cards in the locked cabinet.  However, because he did not have a key to the padlock, DeMong stated that he would have had to pry open the cabinet or ask defendant to open it if he wanted to retrieve his property.

On December 14, 1996, DeMong voluntarily went to the Freeport police department for an interview.  DeMong told police that he saw contraband inside the storage cabinet a couple of months prior to December 14.  The police escorted DeMong to 1225 W. Harrison Street and conducted a warrantless search of the premises, with DeMong's consent.  DeMong informed the police that defendant had the only keys to the padlock on the storage cabinet.  With DeMong's consent, the police forcibly removed the padlock from the storage cabinet and recovered a large quantity of a substance later identified as cocaine.  DeMong was not charged with any drug-related offenses.

In the argument that followed, 
defendant's attorney asserted that although defendant did not have exclusive possession of the Harrison Street residence, he did have exclusive possession of the locked storage cabinet.  Thus, counsel argued
, the police acted without effective third-party consent when they opened the storage cabinet without defendant's permission.  The trial court disagreed and denied defendant's motion to suppress.  According to the court, defendant had no expectation of privacy in the locked cabinet because DeMong and defendant shared the cabinet.  The court also opined that DeMong and defendant were engaged in a "joint venture."  The court therefore reasoned that DeMong had authority to consent to a search of the locked cabinet.

On July 22, 1997, following a conference held pursuant to Supreme Court Rule 402 (177 
Ill. 2d
 R. 402), the parties reached a plea agreement.  Under the terms of the plea, defendant agreed to plead guilty in case No. 96--CF--437 in exchange for a sentence of 25 years' imprisonment and a street value fine of $100,000.  In case No. 96--CF--446, defendant agreed to a plea of guilty in exchange for a sentence of seven years' imprisonment and a street value fine of $1,500.  The sentences were to run concurrently.  In addition, with respect to case No. 96--CF--437, the trial court admonished defendant that he was subject to a two-year term of mandatory supervised release in addition to any prison sentence.   Following additional admonishments, the trial court determined that defendant's plea was voluntary.

The prosecutor then presented the factual basis for the plea.  The prosecutor stated that in the early morning hours of December 14, 1996, the police executed a search warrant for a residence located at 727 American Street, Freeport, Illinois.  Defendant was sleeping at the location, and the police found 738.1 grams of cannabis and 15.8 grams of a substance containing cocaine.  Defendant later admitted that the substances were his.  The prosecutor further stated that later on December 14, 1996, police searched a locked storage cabinet at 1225 W. Harrison Street, Freeport, Illinois, with the consent of DeMong, the lessee of the premises.  Inside the cabinet, the police found a duffel bag.  DeMong told the police that the duffel bag belonged to defendant.  The duffel bag was opened.  Stored inside a plastic bag within the duffel bag was 1,097.3 grams of a substance containing cocaine.  The plastic bag bore defendant's fingerprints.  After the defense stipulated to the factual basis, the court concluded that there was a sufficient basis upon which to enter a finding of guilty on both charges.  The court then admonished defendant regarding his postplea and appellate options.  Defendant did not file any postplea motions, and he did not seek appellate review.

On February 4, 1999, defendant filed, 
inter alia
, a 
pro se
 petition for relief under the Act and a motion for the appointment of counsel.  On September 1, 1999, the trial court appointed the public defender's office to represent defendant on his petition.  After a number of changes in counsel, public defender Robert Miller (Miller) was appointed to represent defendant.  On August 28, 2001, Miller filed a second supplemental postconviction petition.  
In his petition, defendant alleged 
that (1) trial counsel was ineffective at the hearing on the motion to suppress evidence relating to his conviction for possession with intent to deliver cocaine because (a) trial counsel failed to elicit evidence that the cocaine was found in a sealed duffel bag, (b) trial counsel incorrectly cautioned defendant not to testify at the suppression hearing because his testimony could be used against him in the State's case in chief, (c) trial counsel failed to elicit necessary and relevant testimony about the third-party consent to and the scope of the search, and (d) trial counsel failed to competently and properly elicit testimony regarding the circumstances of the evidentiary seizure and to properly argue the law to the facts; (2) defendant was incorrectly admonished at the time of sentencing that he would be required to serve two years of mandatory supervised release when the applicable term was actually three years; (3) trial counsel was ineffective for failing to follow through on defendant's request that counsel file a motion to withdraw defendant's guilty plea; (4) trial counsel was ineffective for failing to pursue a fitness evaluation for defendant, knowing that defendant had not been taking prescribed psychotropic medication; (5) the trial court improperly induced him to plead guilty by suggesting at the Rule 402 (177 Ill. 2d R. 402) conference that defendant was "looking at a potential upper half of the statutory max sentence of 60 years"; and (6) trial counsel was ineffective for improperly inducing defendant to plead guilty by making factual misrepresentations to defendant.  According to defendant, these errors rendered his guilty plea involuntary.

The cause proceeded to an evidentiary hearing, which commenced on September 12, 2001.  At the evidentiary hearing, defendant's trial counsel testified that he began practicing law in 1977 as an assistant State's Attorney in Cook County.  His tenure in the State's Attorney's office included 13 months in the felony trial division.  In October 1980, counsel entered private practice, concentrating in criminal felony defense.  Trial counsel estimated that 60% to 70% of his cases involve drug charges, and he stated that he files motions to suppress in appropriate cases.

With respect to defendant's suppression hearing, counsel stated that he was unable to recall much about defendant's case.  Nevertheless, he opined that he put forth his best efforts in arguing the motion to suppress.  Counsel believed that the closed duffel bag found inside the locked storage cabinet was not material because the police had already received permission to open the storage cabinet.  According to counsel, DeMong's consent to open the locked storage cabinet extended to opening anything inside the locker.  Counsel offered that his opinion might have changed if the duffel bag had been sealed in some manner other than just by a zipper.

Defendant testified that no one presented evidence regarding the duffel bag at his suppression hearing.  This did not alarm defendant at the time; however, months after pleading guilty, defendant conducted some research and discovered the significance of the fact that the cocaine was found inside the duffel bag.  Defendant further testified that no one told him that in addition to his prison sentence, he would have to serve a term of mandatory supervised release.  In fact, defendant testified that he would not have accepted the offer of 25 years' imprisonment had he known that it would include an additional term of three years' mandatory supervised release.  According to defendant, when the trial court announced that he would be subject to a period of two years' mandatory supervised release, he felt "kind of screwed" and did not say anything.

Following defendant's testimony, the parties presented argument.  The court then announced that it would rule by written decision at a future date.  Subsequently, however, the trial court allowed defendant to reopen the proofs, and on May 22, 2002, defendant again testified.

During his testimony, defendant related that it was not until after the hearing on his motion to suppress that the police reports were made available to him.  One of the reports described the search of the locked storage cabinet.  According to defendant, DeMong had allowed defendant to use the premises and had set aside the cabinet for defendant's use.  Defendant possessed the only two keys to the cabinet, and although DeMong stored some collectibles in the locker, defendant never gave DeMong permission to open the cabinet.  Defendant stored personal items in the cabinet, including a duffel bag.  According to defendant, the last time that he saw the duffel bag in the locker, the bag was zipped closed.  Defendant related that  his attorney told him not to testify at the hearing on the motion to suppress because any testimony he gave at the suppression hearing could be used against him at a subsequent trial.  Based on the advice of his attorney, defendant opted not to testify at the suppression hearing.

On August 6, 2002, the trial court issued a written order, granting defendant's petition in part and denying it in part.  The trial court conceded that defendant was mistakenly admonished that he was subject to a term of two years' mandatory supervised release instead of three years.  Accordingly, the court corrected defendant's sentence to reflect a term of 24 years' imprisonment and 3 years' mandatory supervised release.

However, the court rejected the remainder of defendant's claims.  With respect to defendant's claim that trial counsel was ineffective for failing to elicit evidence at the suppression hearing regarding the sealed duffel bag, the court noted that defendant proffered a police report indicating that the cocaine was found in a sealed container that appeared benign on the outside, and the State presented no evidence to the contrary.  Thus, the court conceded that defendant's attorney knew or should have known that the drugs were in a zipped duffel bag.  The court suggested that, had DeMong been an innocent bailee, the outcome of the suppression motion might have been different.  However, relying on the police report detailing the search of the Harrison Street residence and DeMong's testimony at the suppression hearing, the court noted that defendant did not conceal from DeMong the fact that defendant was using DeMong's house to store contraband.  The court reasoned that defendant surrendered his expectation of privacy by storing the drugs at DeMong's residence.  
According to the court, DeMong became defendant's "partner in crime" when defendant brought DeMong into his drug business by storing the duffel bag at DeMong's home.  Given this relationship, the court opined, DeMong had actual authority to consent to search the storage cabinet and the duffel bag inside. 

II.  ANALYSIS

On appeal, defendant insists that he is entitled to postconviction relief.  According to defendant, trial counsel was ineffective for failing to challenge the police search of the sealed duffel bag found inside the locked storage cabinet.  Defendant asserts that had his attorney elicited evidence that the police lacked third-party consent to search the duffel bag, the result of the suppression hearing would have been different and he would not have pleaded guilty.  The State answers that even if trial counsel had challenged the propriety of the search of the duffel bag, defendant's motion to suppress would have been denied because DeMong had actual and apparent authority to consent to a search of the duffel bag.

At the outset, we note that a guilty plea represents a break in the chain of events that has preceded it.  
Tollett v. Henderson
, 411 U.S. 258, 267, 36 L. Ed. 2d 235, 243, 93 S. Ct. 1602, 1608 (1973).  Thus, after pleading guilty, a defendant may not ordinarily raise claims of the deprivation of constitutional rights that occurred prior to the entry of the plea.  
Tollett
, 411 U.S. at 267, 36 L. Ed. 2d at 243, 93 S. Ct. at 1608.  However, a defendant may attack the voluntary character of his plea by showing that the advice he received from counsel was not " 'within the range of competence demanded of attorneys in criminal cases.' "  
Tollett
, 411 U.S. at 266, 36 L. Ed. 2d at 243, 93 S. Ct. at 1608, quoting 
McMann v. Richardson
, 397 U.S. 759, 771, 25 L. Ed. 2d 763, 773, 90 S. Ct. 1441,  1449 (1970).  Here, defendant argues that trial counsel's failure to properly litigate the motion to suppress resulted in ineffective assistance of counsel and rendered his plea involuntary.  The State concedes that the ineffective assistance of counsel claim is cognizable in a postconviction proceeding despite the fact that defendant entered a plea of guilty.  Accordingly, we address defendant's claim below.  See 
State v. Buckman
, 259 Neb. 924, 934, 613 N.W.2d 463, 471 (2000) (holding that in a postconviction proceeding brought by a defendant convicted on the basis of a guilty plea, the court will consider an allegation that the plea was the result of ineffective assistance of counsel).

The Act provides a collateral remedy by which criminal defendants may challenge their convictions or sentences when there have been violations of federal or state constitutional law.  
People v. Rissley
, 206 Ill. 2d 403, 411-12 (2003).  Illinois courts employ a three-step process in adjudicating petitions for postconviction relief.  
People v. Gaultney
, 174 Ill. 2d 410, 418 (1996).  Initially, the trial court considers the petition, without input from the State or further pleadings from the defendant, in order to determine if it is frivolous and patently without merit.  725 ILCS 5/122--2.1 (West 2000).  At this stage, the trial court must examine and rule upon the petition within 90 days after it has been filed and docketed.  725 ILCS 5/122--2.1(a) (West 2000).  If the petition is not dismissed, the proceeding moves to the second stage, at which the trial court may appoint counsel to represent an indigent defendant.  725 ILCS 5/122--4 (West 2000).  Counsel may amend the postconviction petition, and the State may then move to dismiss the petition.  722 ILCS 5/122--5 (West 2000).  If the petition is not dismissed on the State's motion, the proceeding moves to the final stage, an evidentiary hearing.  722 ILCS 5/122--5, 122--6 (West 2000).

In a postconviction proceeding, the defendant bears the burden of proving that he suffered a substantial deprivation of constitutional rights.  
People v. Eddmonds
, 143 Ill. 2d 501, 514 (1991).  Where the trial court dismisses a postconviction petition without an evidentiary hearing, 
de novo
 review is appropriate.  
People v. Johnson
, 206 
Ill. 2d
 348, 357 (2002); 
People v. Coleman
, 183 
Ill. 2d
 366, 384-85 (1998).  However, determinations made by the trial court following an evidentiary hearing will not be disturbed unless they are manifestly erroneous.  
Rissley
, 206 
Ill. 2d
 at 412; 
Johnson
, 206 
Ill. 2d
 at 357; 
People v. Torres
, 305 
Ill. App. 3d 679, 685 (1999)
.  Here, the trial court ruled on defendant's petition following an evidentiary hearing.  Therefore, the manifestly erroneous standard applies.

As noted above, defendant raised several claims of ineffective assistance of trial counsel before the trial court.  However, defendant's argument on appeal is confined to just one claim.  Namely, defendant asserts that he was denied the effective assistance of trial counsel at the hearing on his motion to suppress evidence relating to his conviction of possession with intent to deliver cocaine, because counsel failed to elicit evidence that the cocaine was found in a duffel bag that was zipped closed and that the police lacked third-party consent to search the duffel bag.  Any analysis concerning a claim of ineffective assistance of counsel necessarily begins with the standard set forth in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  
People v. Albanese
, 104 
Ill. 2d
 504, 526-27 (1984) (adopting 
Strickland
 standard in Illinois).  
The 
Strickland
 standard applies to challenges to guilty pleas alleging the ineffective assistance of counsel.  
Hill v. Lockhart
, 474 U.S. 52, 58, 88 L. Ed. 2d 203, 210, 106 S. Ct. 366, 370 (1985); 
People v. Huante
, 143 
Ill. 2d
 61, 67 (1991).  To establish a claim of ineffective assistance of counsel, the defendant must show both that (1) counsel's performance was deficient
 and (2) the deficient performance prejudiced the defendant such that he was deprived of a fair trial.  
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

To satisfy the deficient-performance prong of 
Strickland
, a defendant must show that his counsel's performance was so inadequate that counsel was not functioning as the "counsel" guaranteed by the sixth amendment.  
People v. Erickson
, 183 Ill. 2d 213, 223 (1998).  Counsel's performance is measured by an objective standard of competence under prevailing professional norms.  
People v. Smith
, 195 Ill. 2d 179, 188 (2000).  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance (
Strickland
, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065), and evaluation of counsel's conduct cannot properly extend to areas involving the exercise of judgment, discretion, or trial tactics (
People v. Spann
, 332 
Ill. App. 3d
 425, 430 (2002)).

When a guilty plea is challenged on ineffective assistance grounds, the prejudice prong of 
Strickland
 is satisfied if a reasonable probability exists that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial.  
Hill
, 474 U.S. at 59, 88 L. Ed. 2d at 210, 106 S.Ct. at 370; 
People v. Davison
, 292 
Ill. App. 3d
 981, 985 (1997).  In this case, defendant challenges the voluntariness of his guilty plea in the context of trial counsel's failure to elicit evidence at the suppression hearing that the cocaine seized by the police was found in a sealed duffel bag.  Accordingly, to determine whether there is a reasonable probability that, but for counsel's errors, defendant would not have pleaded guilty, we must evaluate whether defendant's motion to suppress would have been granted had trial counsel introduced evidence regarding the duffel bag at the suppression hearing.  
See 
People v. Orange
, 168 Ill. 2d 138, 153 (1995); 
People v. Myers
, 246 Ill. App. 3d 542, 545 (1993).  " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' "  
Erickson
, 183 Ill. 2d at 224, quoting 
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

With respect to the first prong of the 
Strickland
 standard, 
our analysis indicates that 
trial counsel's failure to challenge the seizure of the cocaine from the duffel bag was objectively unreasonable.  The police report detailing the events that resulted in the seizure of the cocaine from the Harrison Street residence indicates that DeMong granted the police consent to conduct a warrantless search of the premises.  The police inquired about the locked storage cabinet, and DeMong provided the officers with a claw hammer to pry open the locker.  Inside, the police discovered a duffel bag which, according to the police report, "DeMong immediately identified as being the property of Barry Miller."  The police noted that the duffel bag contained "three plastic bags, each of which contained a large volume of white powdered substance believed to be cocaine."  Despite these references to the duffel bag and its contents, as well as DeMong's statement disavowing any ownership interest in the bag,
 counsel's challenge to the warrantless search focused on the locked storage cabinet and omitted any reference to the duffel bag.

Trial counsel's decision not to reference the duffel bag at the evidentiary hearing was not a matter of judgment, discretion, or trial tactics.  It was a mistake of law.  
At the postconviction evidentiary hearing, trial counsel asserted his belief that DeMong's consent to open the locked storage cabinet extended to opening anything inside the locker, including the duffel bag.  However, as Justice O'Connor stated 20 years ago in her concurring opinion in 
United States v. Karo
, 468 U.S. 705, 725, 82 L. Ed. 2d 530, 548, 104 S. Ct. 3296, 3308 (1984) (O'Connor, J., concurring), "[a] privacy interest in a home itself need not be coextensive with a privacy interest in the contents or movements of everything situated in the home."  See also 
United States v. Salinas-Cano
, 959 F.2d 861, 865 (10th Cir. 1992).  In fact, it is 
generally accepted that containers used to hold one's most personal belongings command a higher degree of privacy:

"Common experience of life, clearly a factor in assessing the existence and the reasonableness of privacy expectations, surely teaches all of us that the law's 'enclosed spaces'--mankind's valises, suitcases, footlockers, strong boxes, etc.--are frequently the objects of his highest privacy expectations, and that the expectations may well be at their most intense when such effects are deposited temporarily or kept semi-permanently in public spaces or in places under the general control of another.  Indeed, to the sojourner in our midst--all of us at one time or another--the suitcase or trunk may well constitute practically the sole repository of such expectations of privacy as are had."  
United States v. Block
, 590 F.2d 535, 541 (4th Cir. 1978).

A duffel bag is the type of "enclosed space" contemplated by the authorities cited above since, by definition, it is used to store personal belongings.  See Webster's Third New International Dictionary 699 (2002) (defining "duffel bag" as "a large cylindrical canvas or rubberized fabric bag for transporting personal belongings").

Trial counsel also testified that his opinion regarding the scope of the search might have been different if the duffel bag had been closed with more than a zipper.  However, warrantless searches of other closed but unlocked containers have been found unconstitutional where, as here, the individual consenting to the search lacks any ownership interest in the container.  See 
Salinas-Cano
, 959 F.2d 861 (holding that the defendant's girlfriend lacked authority to consent to search the defendant's unlocked but closed suitcase, which was in girlfriend's apartment); 
People v. Gonzalez
, 88 N.Y.2d 289, 667 N.E.2d 323, 644 N.Y.S.2d 673 (1996) (holding that although the sister of the defendant's accomplice had authority to consent to search of apartment, her permission did not extend to the search of the defendant's duffel bag, which was zippered closed).  This result may be different, of course, depending on the facts of the case.  For instance, in 
Frazier v. Cupp
, 394 U.S. 731, 22 L. Ed. 2d 684, 89 S. Ct. 1420 (1969), the Supreme Court held that the defendant surrendered any expectation of privacy in a duffel bag that was being jointly used by the defendant and the individual who consented to its search.  In 
United States v. Barrera-Martinez
, 274 F. Supp. 2d 950, 956 (N.D. Ill. 2003), the court held that the defendant did not have a reasonable expectation of privacy in a duffel bag where he neither claimed to own the duffel bag, alleged any proprietary interest in it, nor showed that he had exclusive access to the duffel bag.  However, as we will demonstrate later in this decision, there was no evidence that the container searched by police in this case was jointly used.  Moreover, the police were informed by DeMong that the duffel bag belonged to defendant.  Thus, we find that trial counsel's failure to challenge the seizure of the cocaine from the duffel bag was objectively unreasonable.

Turning to the prejudice prong of the 
Strickland
 analysis, we conclude that there is a reasonable probability that, but for counsel's errors, defendant would not have pleaded guilty and would have insisted on going to trial.  We begin our analysis by noting that the United States and Illinois Constitutions protect the right of the people to be secure against unreasonable searches and seizures.  U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6.  Accordingly, a search conducted without a warrant issued upon probable cause is 
per se
 unreasonable.  
United States v. Basinski
, 226 F.3d 829, 833 (7th Cir. 2000); 
People v. Bull
, 185 
Ill. 2d
 179, 196-97 (1998).  There exist, however, several well-recognized exceptions to the warrant requirement.  
Schneckloth v. Bustamonte
, 412 U.S. 218, 219, 36 L. Ed. 2d 854, 858, 93 S. Ct. 2041, 2043 (1973).  It is the State's position that one of those exceptions--a search conducted pursuant to consent--applies to this case.  See 
Schneckloth
, 412 U.S. at 219, 36 L. Ed. 2d at 858, 93 S. Ct. at 2043-44; 
Bull
, 185 
Ill. 2d
 at 197.

Consent to search may be obtained from the person whose property is to be searched (
Illinois v. Rodriguez
, 497 U.S. 177, 181, 111 L. Ed. 2d 148, 156, 110 S. Ct. 2793, 2797 (1990)) or from a third party who possesses "common authority over or other sufficient relationship to the premises or effects sought to be inspected" (
United States v. Matlock
, 415 U.S. 164, 171, 39 L. Ed. 2d 242, 250, 94 S. Ct. 988, 993 (1974)).  In this case, the police report relating to the December 14, 1996, search of the Harrison Street premises indicates that DeMong identified the duffel bag as belonging to defendant.  However, defendant was not present at the time of the search and there is no evidence that the police otherwise obtained his consent to search the container.  Therefore, we will limit our inquiry to whether DeMong possessed "common authority over or other sufficient relationship to" the duffel bag.

The Supreme Court has defined "common authority" as the "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co[-users] has the right to permit the inspection in his own right."  
Matlock
, 415 U.S. at 171 n.7, 39 L. Ed. 2d at 250 n.7, 94 S. Ct. at 993 n.7; see also 
People v. Stacey
, 58 
Ill. 2d
 83, 89 (1974) (adopting in Illinois the "common authority" test set forth in 
Matlock
).  The rationale behind the common-authority doctrine is that a defendant assumes the risk that someone with common authority over property will permit a search of said property.  
People v. Ward
, 301 
Ill. App. 3d
 862, 872 (1998).  Common authority may be "actual" or "apparent
."  
Basinski
, 226 F.3d at 834
; 
United States v. Jenkins
, 285 F. Supp. 2d 999, 1007 (N.D. Ohio 2003) (noting that even if the person giving consent does not have actual, 
common authority over the premises, the consent is valid if the person has 
apparent authority)
.  
"Actual authority" is "[a]uthority that a principal intentionally confers on an agent, including the authority that the agent reasonably believes he or she has as a result of the agent's dealings with the principal."  Black's Law Dictionary 127 (7th ed. 1999).  
In assessing whether "apparent authority" exists, the trial court must determine whether the circumstances known to the police at the time of the entry or opening would warrant a person of reasonable caution in the belief that the consenting party had authority over the premises or effects.  
Rodriguez
, 497 U.S. at 188-89, 111 L. Ed. 2d at 161, 110 S.Ct. at 2801.  At a hearing on a motion to suppress, the defendant bears the burden of showing that the police acted without a warrant and did not observe the defendant doing anything unusual to justify a warrantless search.  
People v. Greco
, 336 
Ill. App. 3d
 253, 259 (2003).  Once the defendant satisfies this burden, the government has the burden of proving by a preponderance of the evidence the effectiveness of a third party's consent.  
Jenkins
, 285 F. Supp. 2d at 1007.

In this case, it is undisputed that the search of the Harrison Street residence was conducted without a warrant.  Moreover, defendant was not present and there was no evidence of any unusual actions in relation to the duffel bag that would justify a warrantless search.  Therefore, the burden shifted to the State to prove the effectiveness of DeMong's consent.

The State repeatedly asserts that DeMong had joint access and control over the locked storage cabinet in which the duffel bag was discovered.  However, because "each such enclosed space stands on its own" (
Block
, 590 F.2d at 541), "[a] homeowner's consent to a search of the home may not be effective consent to a search of a closed object inside the home" (
Karo
, 468 U.S. at 725, 82 L. Ed. 2d at 548, 104 S. Ct. at 3308 (O'Connor, J., concurring)).  In other words, when a guest in a private home has a private container to which the homeowner has no right of access, the homeowner lacks 
the power to give effective consent to a search of the closed container.  
Karo
, 468 U.S. at 726, 82 L. Ed. 2d at 548-49, 104 S. Ct. at 3309 (O'Connor, J., concurring).  In this case, the principal inquiry involves the duffel bag, a separate container.

Of course, authority to search a general area does extend to most objects in plain view within the area.  
Block
, 590 F.2d at 541.  The State suggests in its brief that the drugs seized from the duffel bag fall within the plain-view exception.  According to the State,  defendant's argument that DeMong lacked authority to consent to a search of the duffel bag is "based on a presumption that the duffel was a closed container."  However, that the duffel bag was a closed container finds ample support in the record.  Notably, defendant testified at the evidentiary hearing on his postconviction petition that the last time he saw the duffel bag it was zipped closed.  The State cites no evidence to the contrary.  In its written findings, the postconviction court accepted defendant's position that the drugs were stored in a zipped container.  Moreover, we note that in reciting the factual basis for defendant's plea, the prosecutor informed the court that after the duffel bag was located in the storage cabinet it "was opened up."  The prosecutor's statement implies that the duffel bag was sealed when discovered by the police and that none of the contraband was in plain view.  Accordingly, we turn to whether DeMong had actual or apparent common authority to consent to a search of the duffel bag.  We hold that DeMong possessed neither.

DeMong did not have actual authority to consent to a search of the duffel bag.  As noted previously, actual authority is "[a]uthority that a principal intentionally confers on an agent, including the authority that the agent reasonably believes that he or she has as a result of the agent's dealings with the principal."  Black's Law Dictionary 127 (7th ed. 1999).  The State presented absolutely no proof whatsoever that defendant actually conferred upon DeMong "joint access or control" over the duffel bag.  To the contrary, when the police opened the locked storage cabinet and found the duffel bag, DeMong disavowed any ownership interest in the bag, informing the police that the bag belonged to defendant.  See 
Salinas-Cano
, 959 F.2d at 865 (finding unlawful search where, among other things, the officer was aware that the suitcase belonged to the defendant alone).

In addition, the State failed to demonstrate that DeMong had apparent authority to consent to a search of the duffel bag.  It was the State's burden to demonstrate that the facts available to the officers at the time of the search of the duffel bag would warrant a person of reasonable caution in the belief that the consenting party had authority over the object sought to be inspected.  
Rodriguez
, 497 U.S. at 188, 111 L. Ed. 2d at 161, 110 S. Ct. at 2801.  If the facts available to the officers at the time of the search would not warrant a person of reasonable caution in the belief that the consenting party had authority over the object sought to be inspected, then warrantless entry without further inquiry is unlawful unless authority actually exists.  
Rodriguez
, 497 U.S. at 188-89, 111 L. Ed. 2d at 161, 110 S. Ct. at 2801.  Here, we again point out that the police report indicates that when police opened the locked storage cabinet and found the duffel bag, "DeMong 
immediately
 identified [the bag] as being the property of [defendant]."  (Emphasis added.)  As soon as DeMong informed police that the bag was not his, it was incumbent upon the officers to make further inquiry into whether DeMong had "common authority" over the duffel bag.  The officers did not make this inquiry.  
The officers did not ask DeMong whether he stored any possessions in the duffel bag or made use of the duffel bag for any purpose.  See 
Salinas-Cano
, 959 F.2d at 866 (holding that officers' failure to conduct further inquiry into whether lessee had mutual use of suitcase was improper).  Accordingly, we find that the State failed to sustain its burden of demonstrating that DeMong had apparent authority to consent to a search of the duffel bag found in the storage locker.  See 
United States v. Whitfield
, 939 F.2d 1071, 1075 (D.C. Cir. 1991) (holding that FBI agents did not have enough information to justify warrantless search of coats belonging to the defendant that were stored in the defendant's room in his mother's home); 
United States v. Isom
, 588 F.2d 858, 861 (2d Cir. 1978) (noting that "the consent of the host should ordinarily be insufficient to justify a warrantless search when it is obvious that the searched item is the exclusive property of the guest," but finding warrantless search of locked box did not violate the defendant's constitutional rights where the defendant expressly denied any possessory interest in container). 

Furthermore, there was no evidence that DeMong held some other type of authority over the duffel bag.  For instance, the State asserts that the court found that defendant and DeMong were engaged in a co-criminal relationship.  Although there was evidence that DeMong knew that defendant stored contraband in the locker, we note that the State never charged DeMong with any criminal offense related to the substance recovered from the Harrison Street residence.  In any event, "[r]egardless of the nature of their relationship or the mere commingling of their belongings, a third party and a defendant share common authority only if the third party's degree of control is equal to or greater than that possessed by the defendant."  
People v. Huffar
, 313 
Ill. App. 3d
 593, 596 (2000).  In this case, there was no evidence that DeMong had equal or greater control over the duffel bag.  To the contrary, when the police discovered the duffel bag, DeMong immediately told the police that it belonged to defendant.  Thus, DeMong's right to access the duffel bag was not equal to or greater than defendant's right.  See 
Basinski
, 226 F.3d at 832, 836 (noting that although the relationship between the defendant and the third party "may have extended to criminal activity," the third party lacked authority to consent to search of the defendant's briefcase). 

Accordingly, we conclude that there is a reasonable probability that had trial counsel challenged the search of the duffel bag at the suppression hearing, the motion to suppress would have been granted.  Moreover, we believe that, had the motion to suppress been granted, defendant would not have pleaded guilty to the charge of possession with intent to deliver cocaine, as the substances seized formed the entire basis of the charge in case No. 96--CF--437.  Thus, we find that defendant received ineffective assistance of counsel, and the trial court's decision denying defendant's petition for postconviction relief was manifestly erroneous.

Before closing, we note that defendant also argues that his plea in case No. 96--CF--446 was tainted.  However, the cannabis forming the basis for the indictment in case No. 96--CF--446 was discovered pursuant to a search warrant.  Defendant does not set forth any basis in his postconviction petition challenging the search warrant or trial counsel's performance in relation to case No. 96--CF--446.  Accordingly, we find this issue waived.  725 ILCS 5/122--3 (West 2000); 
People v. Flores
, 153 
Ill. 2d
 264, 274-75 (1992) (holding that any claim of substantial denial of constitutional rights not raised in the original or an amended postconviction petition is waived).

III.  CONCLUSION

For the foregoing reasons, 
the judgment of the circuit court of Stephenson County denying defendant's petition for posconviction relief is reversed.  Defendant's guilty plea is vacated, and the cause is remanded for further proceedings.

Reversed and remanded.

O'MALLEY, P.J., and CALLUM, 
J., concur.