2020 IL App (2d) 170562-U cons.
Nos. 2-17-0562 & 2-17-0563 cons.
Order filed July 9, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lee County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 14-CF-249 |
| | ) ) | 15-CF-86 |
| STEVEN P. HIBBERD, | ) ) | Honorable Jacqueline D. Ackert, |
| Defendant-Appellant. | ) ) ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices McLaren and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The Appellate Court reversed the summary dismissal of the defendant's *pro se* postconviction petition and remanded the cause for second-stage proceedings where the defendant was arguably denied effective assistance counsel when counsel failed to preserve the defendant's right to appeal the denial of his motion to suppress evidence.

¶ 2    Defendant, Steven P. Hibberd appeals the summary dismissal of his *pro se* postconviction petition. On November 3, 2016, defendant pleaded guilty to two counts of child pornography (720 ILCS 5/11-20.1(a)(6) (West 2014)), and he was sentenced to 7 years' incarceration on each

conviction, to be served consecutively. Defendant's guilty plea followed the denial of his motion to suppress evidence seized pursuant to a search warrant. Defendant did not file a direct appeal. In his postconviction petition, defendant alleged, *inter alia*, that his guilty plea was induced by his counsel's ineffectiveness in failing to advise him to preserve his right to appeal the denial of his motion to suppress. For the following reasons, we reverse and remand this cause for proceedings pursuant to the second stage of the Postconviction Hearing Act (Act) (725 ILCS 5/122-2 *et seq.* (West 2016)).

¶ 3                                    I. BACKGROUND

¶ 4                                    A. The Search Warrant

¶ 5      Sergeant Matthew W. Richards of the Dixon Police Department filed a complaint for a warrant to search defendant's home for evidence of the crime of attempted aggravated criminal sexual abuse and to seize and search all electronic devices found therein. In support of the complaint, Richards averred the following in his affidavit.

¶ 6      In October 2014, Richards began investigating defendant after receiving a complaint that defendant sought sex with an underage female. Nicole Green and her boyfriend Casey Korsma were the complainants. They met defendant on a dating website, Plenty of Fish, where they indicated their desire to engage someone in sexual intercourse. After this initial correspondence, Green and defendant communicated through text messages. Defendant sent and received the text messages on his cell phone. Initially, defendant pretended to be a woman named Stephanie, but he soon revealed his identity to the complainants. When defendant asked if his "super young girlfriend"—age 14—could join the three of them in a sexual encounter, Green and Korsma contacted the police.

¶ 7      At the behest of the police, Green communicated her interest in the 14-year-old to

defendant. However, defendant stated that he could not bring the young girl to a sexual tryst and suggested instead that they rendezvous with three males. Defendant stated that he liked "the other scenario more, though" indicating that he would rather have sex with the 14-year-old female. Green said that she would ask Korsma if he could get "a young one." Green asked defendant: "Are you down with that?" Defendant responded: "I'm absolutely down with it. No judgment." When Green pressed him, defendant said, "I absolutely am [down with it]. Do you know how rare this is for all three of us? It's not every day two men and a woman admit we want to fuck with a teen, or younger. It's fucking hot."

¶ 8    At Richards' suggestion, Green proposed to defendant that they procure an underage prostitute. Defendant stated, "That is a really safe bet." Defendant continued: "You get a regular teen girl, she will talk." Defendant added: "The only drawback being with a youngin [*sic*], they are tender. This girl would be like a young adult. Makes sense." Defendant then suggested that they meet in a hotel. When Green agreed, defendant texted that the sexual encounter would take place on November 6, 2014, at 7 p.m. in the Comfort Inn Hotel in Dixon. Then, defendant texted that he was not going to meet.

¶ 9    The affidavit next indicated that defendant was arrested in 1994, when he was 17, for having sexual intercourse with a 12-year-old female. Defendant was convicted of aggravated criminal sexual abuse arising from that incident. The affidavit also stated that defendant failed to register his Facebook account and the Plenty of Fish website with the authorities. Richards attached two photos of defendant's residence to his affidavit.

¶ 10    On November 6, 2014, the court issued the search warrant. The court found that the complaint for the warrant stated probable cause and commanded that defendant's residence and unattached garage be searched for evidence of the offense of "attempted aggravated criminal

sexual abuse." The warrant also commanded the police to seize the following items: (1) cellular telephones, (2) computers, (3) all electronic devices capable of accessing the Internet, (4) digital media able to store information, (5) documents to include ledgers and/or journals depicting passwords, Internet access information, websites previously visited, and all information related to Internet searches, and (6) all other electronic devices which are able to send or receive electronic communication. The warrant then provided that the search was "to include the downloading and extraction of media and data on any and all electronic device(s)."

¶ 11    The police executed the search warrant on November 7, 2014. As a result of their seizure of certain electronic devices, and their search of the contents of at least one of those devices, defendant was charged by complaint in case number 14 CF 249 with 6 counts of child pornography based upon images that were found on the devices.[1] Other devices that were seized pursuant to the warrant were sent for forensics analyses.

¶ 12                          B. The Motion to Suppress

¶ 13    On December 10, 2014, defendant's public defender filed a motion to suppress the evidence seized pursuant to the warrant. The only ground alleged was lack of probable cause. Specifically, the motion alleged that the search warrant was based on text messages between defendant and Green that showed defendant's interest in having sex with a 14-year-old female, which he then abandoned. The motion contended that defendant did not take a substantial step toward committing the crime of aggravated criminal sexual abuse. Counsel did not cite available case law in support of the motion.

¶ 14    Richards was the only witness who testified at the hearing on the motion to suppress

---

[1] A superseding information charging the same 6 counts was filed on November 21, 2014.

evidence. His testimony mirrored his affidavit in support of his complaint for the search warrant, except for the following additional details. Richards testified that the time for the rendezvous at the Comfort Inn in Dixon had not yet arrived when he applied for the search warrant. According to Richards, defendant changed his mind several times about the meeting, so Richards applied for the warrant before defendant changed his mind again. Richards testified that the police had a room staged at the Comfort Inn. Richards further testified that defendant sent Green and Korsma a picture of a young girl. Also, according to Richards, the police investigation into the crime of attempted aggravated criminal sexual abuse was ongoing, pending the forensic examination of certain of the electronic devices that were seized pursuant to the warrant. On cross-examination, Richards testified that he did not know if defendant used a computer to contact Green and Korsma, or if he used only his cell phone or a tablet.

¶ 15    The court (Judge Jacobson) identified the issue as whether defendant took a substantial step toward committing aggravated criminal sexual abuse. Defense counsel represented to the court that he could find no apposite case law. The court found that defendant's ongoing colloquy via text messages with Green constituted a substantial step. The court ruled that defendant's ultimate withdrawal from the plan did not negate that a substantial step had already occurred.

¶ 16    Defense counsel filed a motion to reconsider, again alleging the lack of probable cause and also alleging overbreadth in that the warrant allowed the seizure of devices other than defendant's cell phone. On April 9, 2015, the court (Judge Jacobson) denied the motion to reconsider.

¶ 17                             C. Additional Charges

¶ 18    On April 29, 2015, defendant was charged by complaint with an additional 81 counts of

child pornography in case number 15 CF 86.[2] Then, on June 24, 2015, the State filed a superseding information containing 125 counts of child pornography. These additional charges stemmed from evidence found during the forensic analyses of certain devices seized pursuant to the search warrant. On November 3, 2016, pursuant to a negotiation, defendant pleaded guilty to two counts of child pornography in case number 14 CF 249 and was sentenced to 7 years' incarceration on each count to be served consecutively. The State dismissed the remaining charges. Defendant did not file a direct appeal.

¶ 19                               D. Postconviction Proceedings

¶ 20    On April 18, 2017, defendant filed a *pro se* petition for postconviction relief. Pertinent to this appeal, defendant alleged that the evidence of attempted aggravated criminal sexual abuse, upon which the search warrant was based, was totally lacking where defendant neither had the intent to commit the crime nor took a substantial step toward its commission. Defendant included case law from this court, which his counsel did not cite to the trial court, bearing on whether the evidence proved that he took a substantial step. Defendant also alleged that, after the court denied the motion to suppress, he told defense counsel that he wanted to appeal "right away." Defendant alleged that defense counsel said that the motion to suppress had merit, but that defendant could not appeal unless he went to trial and lost. Defendant alleged that counsel told him that defendant "would be risking an extended-term sentence on the images and it may not be wise to appeal." Defendant then stated that he would probably be pleading guilty.

¶ 21    Pertinent to this appeal, in dismissing defendant's petition, the court (Judge Ackert) characterized defendant's ineffective-assistance allegation as follows: "[Defendant] specifically

_____

[2] From this point, 14 CF 249 and 15 CF 86 were heard together in the trial court.

alleges that his attorney failed to investigate and argue a motion to suppress." The court found this allegation untenable: "This argument is in direct contradiction to the record." The court concluded that defendant's allegations "lack merit" and that defendant "failed to make a substantial showing that his constitutional rights were violated." Defendant filed notices of appeal in both 14 CF 249 and 15 CF 86. This court consolidated the appeals.

¶ 22                                II. ANALYSIS

¶ 23    Defendant raises three issues on appeal: (1) trial counsel was ineffective in litigating the motion to suppress, (2) trial counsel was ineffective in wrongly advising defendant that he could preserve his right to appeal the denial of the motion to suppress only by going to trial and losing, and (3) the court misapprehended the issue and applied the wrong standard in dismissing the postconviction petition.

¶ 24    Postconviction proceedings contain three stages. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). At the first stage, the circuit court, within 90 days of the petition's filing, determines, taking the allegations as true, whether the petition is frivolous or is patently without merit. *Hodges*, 234 Ill. 2d at 10. If the court does not summarily dismiss the petition as frivolous or patently without merit, the petition advances to the second stage, where counsel may be appointed, and the State allowed to file a motion to dismiss. *Hodges*, 234 Ill. 2d at 10. If the petition advances to the third stage, the court will hold an evidentiary hearing. *People v. Edwards*, 197 Ill. 2d 239, 270 (2001). Our review of the petition's dismissal is *de novo*. *Hodges*, 234 Ill. 2d at 8.

¶ 25    Here, defendant's petition was dismissed at the first stage. Therefore, the petition was properly dismissed only if it presents "no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 12. A petition lacks an arguable basis either in law or in fact when it is based on an indisputably meritless legal theory or a fanciful factual allegation. *Hodges*, 234 Ill. 2d at 16.

Because defendant's claim that counsel was arguably ineffective in advising defendant that he could not immediately appeal the search warrant issue is sufficient to advance the petition to the second stage, we reverse and remand for second-stage proceedings on the entire petition. See *People v. White*, 2014 IL App (1st) 130007, ¶ 33 (partial summary dismissals are not permitted at the first stage, so one meritorious claim advances the entire petition to the second stage).

¶ 26     Ineffective-assistance-of-counsel claims raised in a postconviction petition are determined under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Pellegrini*, 2019 IL App (3d) 170827, ¶ 52. The petitioner must demonstrate that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687-88. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. *Pellegrini*, 2019 IL App (3d) 170827, ¶ 53. Specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms. *People v. Domagala*, 2013 IL 113688, ¶ 36.

¶ 27     Here, in dismissing the petition, the court found that defendant failed to make a substantial showing that his constitutional rights were violated, which is the second-stage dismissal standard. Nevertheless, as the court summarily dismissed the petition within 90 days without input from any party, the dismissal was procedurally proper. See *People v. Dominguez*, 366 Ill. App. 3d 468, 473 (2006). Thus, we may apply the proper standard and affirm if, in accordance with that standard, the summary dismissal is justified. *Dominguez*, 366 Ill. App. 3d at 473.

¶ 28     The court misperceived the issue to be that defendant's attorney "failed to investigate and argue a motion to suppress." The court noted that this "allegation" was contradicted by the record. Contrary to the court's finding, and liberally construing defendant's postconviction petition, as we

must (see *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 5), defendant alleged that he pleaded guilty because he was not afforded an appeal of the denial of his motion to suppress. Had he been able to appeal, defendant argued, he would have been successful, and he would not have pleaded guilty.

¶ 29    On appeal, defendant asserts that counsel's advice arguably amounted to deficient performance because it omitted that a stipulated bench trial would have preserved the search-warrant issue for direct appeal. Defendant relies on *People v. Miller*, 346 Ill. App. 3d 972, 980-81 (2004), for the proposition that defense counsel's deficient litigation of a motion to suppress evidence results in ineffective assistance, which renders a subsequent guilty plea involuntary. Generally, a guilty plea waives all nonjurisdictional defenses or defects. *People v. Horton*, 143 Ill. 2d 11, 22 (1991). However, a stipulated bench trial avoids the waiver rule while allowing the parties the convenience and benefits of a guilty plea. *Horton*, 143 Ill. 2d at 22.

¶ 30    The State argues that defendant's plea was entered voluntarily, after proper admonishments, in exchange for the dismissal of numerous charges of child pornography. However, the State acknowledges that defendant claims that his plea was not intelligently made— and therefore was not voluntary—because of counsel's deficient performance. The State argues that defendant must show that counsel's advice was not only wrong, but that it was not within the range of competence demanded of lawyers in criminal cases, relying on *McMann v. Richardson*, 397 U.S. 759 (1970). The State contends that counsel's advice was not erroneous and was within the range of competence.

¶ 31    Defendant argues that the proper standard is whether a defendant's decision to reject a plea bargain is "rational under the circumstances." In *People v. Valdez*, 2016 IL 119860, ¶ 29, our supreme court held that, to show prejudice in the guilty-plea context, a defendant "must convince

the court that a decision to reject the plea bargain would have been rational under the circumstances." Defendant contends that, had his counsel informed him that a stipulated bench trial would preserve his right to appeal the search warrant issue, his decision to reject a plea bargain would have been rational because he faced the same sentencing risk whether he pursued a stipulated bench trial or a negotiated guilty plea. Defendant notes that a court is not bound by the parties' agreement. Illinois Supreme Court Rule 402(d)(3) (eff. July 1, 2012).

¶ 32    Even under the *McMann* standard, we believe that it is arguable that counsel's advice was an error of omission, because competent criminal counsel could have preserved defendant's right to an immediate appeal by the expediency of a stipulated bench trial. Hand in glove with this omission, counsel also advised defendant that an appeal would be unwise because of the risk of a lengthy prison sentence. Thus, counsel advised against an appeal without also advising defendant of his chances of success on appeal, even before an offer of a negotiated plea materialized. The record shows that counsel was not conversant with relevant case law from this court in defendant's favor. Arguably, competent counsel in criminal cases would have researched the case law and advised defendant that his appeal was meritorious enough that rejecting a negotiated plea was rational under the circumstances.[3] With that information, coupled with the information that he could preserve his right to appeal, defendant could have intelligently decided whether to plead guilty. Accordingly, defendant's petition is not frivolous or patently without merit. That is all we decide today. We express no opinion on the merits of the issues of whether probable cause existed

---

[3] The State's argument that defendant was facing extended-term sentencing on over 125 counts of child pornography is misleading because all but six of those counts were filed after defendant's speedy-trial term lapsed.

to issue the search warrant or whether defendant will ultimately prevail on his ineffective-assistance claim.

¶ 33                                                    III. CONCLUSION

¶ 34     For the reasons stated, we reverse the judgment of the circuit court of Lee County and remand for second-stage proceedings pursuant to the Act.

¶ 35     Reversed and remanded.